**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

TAMARA WAREKA p/k/a TAMARA WILLIAMS,    :
                                                            :
                             Plaintiff,    :                    24-CV-2025 (CM) (OTW)
                                                            :
                     -against-    :
                                                            :    **REPORT & RECOMMENDATION TO**
BEAUTY PRO NYC INC. and DOES 1 through 10    :    **THE HONORABLE COLLEEN**
inclusive,    :    **MCMAHON**
                                                            :
                             Defendant.    :
                                                            :
---------------------------------------------------------------x

       **ONA T. WANG, United States Magistrate Judge:**

**I.    INTRODUCTION**

      Plaintiff Tamara Williams ("Plaintiff") filed suit on March 18, 2024, against Defendant

Beauty Pro NYC, Inc. ("Defendant[1]"), and ten unknown individuals, pursuant to the Copyright

Act, 17 U.S.C. § 101, *et seq.* and the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C.

§1202. (ECF 1). Plaintiff is a photographer who specializes in beauty and fashion photography,

and owns the intellectual property rights arising from her photographs. Plaintiff alleges

Defendant violated the Copyright Act and the DMCA by unlawfully using one of Plaintiff's

photos in Defendant's Instagram post marketing its business. (ECF 1 at ¶ 23). Defendant failed

to appear and defend themselves in this action. Accordingly, Judge McMahon entered a default

judgment against Defendant on October 7, 2025. (ECF 19). This matter is before me for an

inquest following the entry of default judgment against Defendant. (*See* ECF 20).

---

[1] Default judgment was entered only as to Beauty Pro NYC Inc. and not as to any unnamed Defendants.
Subsequent uses of "Defendant" refer only to Beauty Pro NYC Inc.

1

Upon review of the record and Plaintiff's submission in support of her request for damages, (ECF 24), I respectfully recommend that Plaintiff be awarded: (1) **$5,000.00** in statutory damages; (2) **$2,226.25** in attorneys' fees; and (3) **$862.00** in costs.

## II.    BACKGROUND

### A.  Factual History

Plaintiff is a freelance photographer who specializes in beauty and fashion photography, whose work has been featured in major publications and used by major commercial brands. (ECF 1 at ¶¶ 10-11). Plaintiff owns the copyright to a "close up beauty photograph of [a] woman's uplifted face" (the "Beauty Photograph"), which Plaintiff published with a watermark referencing her Instagram handle. (ECF 1 at ¶¶ 13-16). The Beauty Photograph was registered with the United States Copyright Office under registration number VA 2-274-918 with an effective registration date of October 19, 2021. (ECF 1 at ¶ 16).

Plaintiff alleges that Defendant is a beauty spa specializing in medical spa treatments and services. (ECF 1 at ¶ 18). Defendant maintains a public Instagram page that generates content to advertise its business. (ECF 1 at ¶¶ 19-20). On or about October 14, 2023, Plaintiff discovered Defendant had used the Beauty Photograph in a post on Defendant's Instagram to advertise for eyelid treatments (the "Infringing Post"). (ECF 1 at ¶ 23). The post included both Plaintiff's original watermark with her Instagram handle and an additional image of Defendant's business name. (ECF 1 at ¶¶ 24-26). Plaintiff alleges that she did not grant Defendant a license or permission to display, distribute, or use the Beauty Photograph. (ECF 1 at ¶ 29). Plaintiff reached out to Defendant in attempt to resolve the issue without court intervention, but the parties were unable to resolve the dispute. (ECF 1 at ¶ 28).

2

**B.  <u>Procedural History</u>**

Plaintiff initiated this action on March 18, 2024, by filing a complaint (the "Complaint") asserting claims against Defendant pursuant to 17 U.S.C. § 101 *et seq.* and § 1202. (ECF 1 at ¶ 1). Plaintiff requests (1) actual damages and profits, or, in the alternative, statutory damages pursuant to 17 U.S.C. § 504(c); (2) statutory damages for each violation of 17 U.S.C. § 1202(a) pursuant to § 1203(c)(3)(B); (3) injunctive relief; (4) attorney's fees and costs pursuant to 17 U.S.C. § 505 and § 1203(b)(3); and (5) pre- and post- judgment interests. (ECF 1 at 9).

On April 23, 2024, Plaintiff served Defendant pursuant to Fed. R. Civ. P. 4(e)(1) by delivering the requisite papers to an authorized person in the Corporate Division of the Department of State who was empowered to receive the service pursuant to § 306 of New York Business Corporation law. (ECF 11). Defendant's answer was due on May 14, 2024. (ECF 11). On May 29, 2024, Plaintiff sought and received a Certificate of Default because Defendant had neither appeared nor responded to the Complaint. (ECF Nos. 15, 17). Plaintiff moved for Default Judgment as to Defendant on September 4, 2024. (ECF 18). Judge McMahon entered default judgment against Defendant on October 7, 2024. (ECF 19). This matter was then referred to me for an inquest on damages. (ECF 20).

I ordered Plaintiff to file their proposed findings of fact and conclusions of law by November 12, 2024, with Defendant's opposition due December 12, 2024. (ECF 21). Plaintiff filed their inquest submission on November 11, 2024, (ECF Nos. 23-24), and served Defendant with the same on November 11, 2024. (ECF 25). To date, Defendant has not filed an opposition. (*See* Docket).

3

III.   **DISCUSSION**

A. <u>**Legal Standards**</u>

1. *Determining Liability*

A defendant's default is deemed "a concession of all well-pleaded allegations of liability," *Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015), but "[a] default only establishes a Defendant's liability if those allegations are sufficient to state a cause of action against the Defendant." *Gesualdi v. Quadrozzi Equip. Leasing Corp.*, 629 F. Appx. 111, 113 (2d Cir. 2015). Accordingly, a court "must determine whether the allegations in the complaint establish the Defendant's liability as a matter of law." *Nguyen v. Pho Vietnam 87 Corp.*, No. 23-CV-4298 (JLR)(VF), 2025 WL 564546, at *3 (S.D.N.Y. Jan. 31, 2025) (internal quotation marks omitted), *rep. & rec. adopted by* 2025 WL 562763 (S.D.N.Y. Feb. 19, 2025). If a complaint fails to state a claim on which relief may be granted, the Court may not award damages notwithstanding the default. *Id.* (citing *Lopez v. Emerald Staffing, Inc.*, No. 18-CV-2788 (SLC), 2020 WL 915821, at *4 (S.D.N.Y. Feb. 26, 2020)). Similarly, if the conceded factual allegations do not demonstrate that the Court has jurisdiction over the case, the Court cannot issue a binding judgment. *See Spin Master, Ltd. v. 158*, 463 F. Supp. 3d 348, 361-62 (S.D.N.Y. 2020), *adhered to in part on recons.*, No. 18-CV-1774 (LJL), 2020 WL 5350541 (S.D.N.Y. Sept. 4, 2020).

2. *Determining Damages*

Even though a complaint's factual allegations are presumed true in the event of a default, damages allegations are not entitled to the same presumption. *Greyhound*

*Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). The plaintiff "bears

the burden of establishing [their] entitlement to recovery," *Lopez*, 2020 WL 915821 at *5, and

must supply an evidentiary basis for the specific damages sought. *Santana v. Latino Express

Restaurants, Inc.*, 198 F. Supp. 3d 285, 292 (S.D.N.Y. Jul. 28, 2016). Evidence submitted by the

plaintiff must also be admissible. *Poulos v. City of New York*, No. 14-CV-03023 (LTS)(BCM), 2018

WL 3750508, at *2 (S.D.N.Y. July 13, 2018). An inquest into damages may be conducted without

an evidentiary hearing. *See Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53-54 (2d Cir. 1993).

"[A] hearing is not required where a sufficient basis on which to make a calculation exists."

*Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195 (LLS)(JLC), 2012 WL 1669341, at *2

(S.D.N.Y. May 14, 2012); *see also* Fed. R. Civ. P. 55(b)(2). In this case, no hearing was requested

or held, as the damages can be ascertained "with reasonable certainty." *Credit Lyonnais Sec.

(USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). "Ultimately, the default judgment the

Court enters must not differ in kind from, or exceed in amount, what is demanded in the

pleadings." *Nguyen*, 2025 WL 564546 at *3 (internal quotations omitted).

    **B.  Liability**

        ***1.  Jurisdiction and Venue***

This Court has proper subject matter jurisdiction over this case. The Court has federal

question jurisdiction under 28 U.S.C. § 1331, as Plaintiff brings claims under the federal

Copyright Act and the Digital Millennium Copyright Act. The Court may also exercise personal

jurisdiction over Defendant. *See Pinzon v. 467 Star Deli Inc.*, No. 22-CV-6864 (JGK)(SLC), 2023

WL 5337617, at *4 (S.D.N.Y. July 31, 2023), *rep. & rec. adopted by* 2023 WL 5334757 (S.D.N.Y.

Aug. 18, 2023) ("Personal jurisdiction is 'a necessary prerequisite to entry of a default

judgment.'"). The Court has personal jurisdiction over Defendant because it is a New York

corporation that maintains its principal place of business at 2 West 46th Street Suite 806, New

York, NY 10036. (ECF 16-1, Ex. A; ECF 18-2, Ex. D). Defendant was also served via the New York

Secretary of State pursuant to § 306 of the New York Business Corporation law. (ECF 11). Venue

is proper under 28 U.S.C. § 1391(d) because Defendant is a corporation with a principle place of

business in Manhattan, New York and therefore subject to personal jurisdiction in the Southern

District of New York.

### 2. *Copyright Infringement*

To establish copyright infringement, a plaintiff must show: (1) ownership of a valid

copyright, and (2) unauthorized copying of original elements of the copyrighted work. *Feist

Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

As to the first element, "[t]he certificate of a registration made before or within five

years after publication of the work shall constitute prima facie evidence of the validity of the

copyright." U.S.C. § 410(c); *see also Iantosca v. Elie Tahari, Ltd.*, No. 19-CV-4527 (MKV), 2020

WL 5603538, at *3 (S.D.N.Y. Sept. 18, 2020) (citing *BWP Media USA, Inc. v. Gossip Cop Media,

Inc.*, 196 F. Supp. 3d 395, 401 (S.D.N.Y. 2016) ("[r]egistration constitutes *prima facie* evidence of

ownership and validity absent an affirmative demonstration of fraud on the [Copyright

Office].")

To show unauthorized copying, "'the plaintiff must first show that his work was actually

copied; second, he must establish a substantially similarity or that the copying amounts to an

improper or unlawful appropriation.'" *Yague v. Visonaire Publ'g LLC*, No. 19-CV-11717 (LJL),

6

2021 WL 4894676, *1 (S.D.N.Y. Sept. 14, 2021) (quoting *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 131 (2d Cir. 2003) (internal quotation marks omitted)).

Plaintiff has established that Defendant infringed her copyright of the Beauty Photograph. First, Plaintiff submitted a certification of registration for the Copyright of the Beauty Photograph, effective October 19, 2021. (ECF No. 1 ¶ 16, 1-1 Exhibit B). Second, Plaintiff has successfully shown unauthorized copying of the Copyright, by submitting screenshots of Defendant's Infringing Post. (ECF No. 1-1, Exhibit C). The image in the Infringing Post appears to be identical to the Beauty Photograph and includes Plaintiff's original watermark. (ECF No. 1-1, Exhibit D). *See Yague*, 2021 WL 4894676 at *1 (finding Plaintiff established copyright infringement where the Plaintiff's copyrighted image and the image used by Defendant were "identical").

Accordingly, Plaintiff has sufficiently established Defendant's liability for copyright infringement under the Copyright Act.

### 3. *Willful Misconduct*

Willfulness in copyright infringement requires either (1) actual knowledge of the infringement or (2) actions reflecting reckless disregard or willful blindness to the copyright holder's rights. *Island Software & Comput. Servs., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005). Knowledge of infringement "may be constructive rather than actual; that is, it need not be proven directly but may be inferred from the Defendant's conduct." *Industria de Diseño Textil, S.A. v. Thilikó, LLC*, No. 23-CV-47 (JPC), 2023 WL 5694523, at *2 (S.D.N.Y. Aug. 2, 2023) (quoting *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1010 (2d Cir. 1995)).

While willfulness can already be inferred from the Defendant's default, it can also be inferred from Defendant's decision to retain Plaintiff's watermark on the Beauty Photograph in the infringing post. *North Face Apparel Corp. v. Moeler,* No. 12-CV-6688 (JGK)(GWG), 2015 WL 4385626, at *6 (S.D.N.Y. July 16, 2015). Additionally, prior to commencing this action, Plaintiff sent a Cease-and-Desist letter to Defendant to put it on notice of the ongoing infringement. (ECF 24 at 9). Because Defendant continued the infringing behavior despite this notice, willfulness can be inferred. *See Martinka v. RentOwnSell LLC,* No. 24-CV-05289 (JHR)(HJR), 2025 WL 2177258, at *7 (S.D.N.Y. July 31, 2025) (finding evidence of defendant continuing to infringe after receiving notice to end activity demonstrates willfulness) (internal citations omitted).

### 4.  *Falsification of Copyright Management Information.*

To succeed on a Section 1202(a) claim, a plaintiff must show that the "Defendant knowingly provided false copyright information, and that the defendant did so with the intent to induce, enable, facilitate, or conceal an infringement." *Krechmer v. Tantaros*, 747 F.Appx. 6, 9 (2d Cir. 2018) (emphasis removed). Copyright Management Information ("CMI") includes "the name of, and other identifying information about, the author . . . [or] copyright owner of the work."  17 U.S.C. § 1202(c)(2)-(3).

Plaintiff has established that Defendant's conduct violates Section 1202(a). Firstly, Defendant intended to conceal its infringement by adding its tradename to the Infringing Post. (ECF Nos. 1 ¶ 42-44, 1-1 Exhibit C). Second, Defendant's conduct was intentional because it knew it was not the copyright owner of the Beauty Photograph and knew it had not obtained the license for use, which is evidenced by the presence of Plaintiff's watermark. *See Reiffer v. NYC Luxury Limousine Ltd.,* No. 22-CV-2374 (GHW), 2023 WL 4029400, at *9 (S.D.N.Y. June 15,

2023) (finding defendant's infringement was willful when defendant saw plaintiff's name on the work and intentionally altered the image before posting the image to their website). Finally, it is reasonable to infer that Defendant intended to mislead the public to believe that Defendant owned the Beauty Photograph by including its own watermark without crediting Plaintiff as the image owner. *See Penske Media Corp. v. Shutterstock, Inc.*, 548 F. Supp. 3d 370, 381–82 (S.D.N.Y. 2021) (finding scienter for falsifying CMI where the parties' license agreement ended but the defendant company continued to display "thumbnail" versions of the photographs on its website which contained a watermark with the defendant's name but nowhere explained that another company (the plaintiff) owned the copyright).

Accordingly, Plaintiff has sufficiently established that Defendant are liable for falsifying CMI under Section 1202.

## C.  Damages

Having found Defendant liable for copyright infringement and under the DMCA, the Court must determine the appropriate damages to which Plaintiff is entitled. A default judgment does not automatically resolve the issue of damages; rather the plaintiff must provide evidence substantiating their request. *Dunn v. Advanced Credit Recovery Inc.*, No. 11-CV-4023 (PAE)(JLC), 2012 WL 676350, at *2 (S.D.N.Y. 2012) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). Damages may be proven through an evidentiary hearing, or through affidavits and other document submissions that provide a factual basis for determining the amount of damages to be awarded. *Greyhound*, 973 F.2d at 158.

After Judge McMahon entered default judgment against Defendant, (ECF 19), I ordered

Plaintiff to file (1) proposed findings of fact and conclusions of law and (2) an inquest

memorandum setting forth proof of damages, supported by documentary evidence and/or one

or more affidavits establishing any proposed figures. (ECF 21). On November 11, 2024, Plaintiff

filed her proposed findings of fact and conclusions of law, (ECF 23), as well as an inquest

memorandum, (ECF 24), an affidavit declaration from Plaintiff's attorney, (ECF 24-1), examples

of Plaintiff's licensing fees, (ECF-2, Ex. A), and proof of payment for service fees and Plaintiff's

attorney's contemporaneous billing records. (ECF 24-2, Ex. B). Defendant did not respond to

Plaintiff's motion for default judgment, nor her inquest briefing. (*See* Docket). Because

Plaintiff's submissions constitute a sufficient basis from which to evaluate the fairness of the

requested damages, an in-person hearing is not necessary, *see Nguyen*, 2025 WL 564546, at

*12 (citing *Fustok v. ContiCommodity Servs. Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)), and the Court

will assess damages below.

### 1. *Copyright Infringement*

Under 17 U.S.C. § 504, a copyright owner can opt to recover: (1) actual damages; (2)

statutory damages, ranging from a minimum of $750 to a maximum of $30,000 for all

infringements involved in the action, as the court considers just; or (3) if, the court finds that

the infringement was willful, an increased award of up to $150,000. 17 U.S.C. §§ 504(c)(1)-(2).

Plaintiff requests statutory damages in the amount of $15,000 under § 504(c)(1).

Given the lack of information regarding actual damages that Plaintiff suffered from

Defendant's infringement, Plaintiff is eligible for statutory damages. *See Lucerne Textiles, Inc. v.*

*H.C.T. Textiles Co.*, No. 12-CV-5456 (KMW)(AJP), 2013 WL 174226, at *2 (S.D.N.Y. 2013), *rep. &*

*rec. adopted at* 2013 WL 1234911 (S.D.N.Y. 2013) (collecting cases) (finding "[s]tatutory damages for copyright infringement are available without proof of plaintiff's actual damages or proof of any damages") (internal quotation marks omitted).

When calculating statutory damages under § 504(c), courts must consider six factors: (1) the infringer's state of mind; (2) the infringer's expenses saved and profits earned; (3) the copyright holder's revenue; (4) the deterrent effect on the infringer and others; (5) the infringer's cooperation in providing evidence regarding the value of the infringing material; and (6) the parties' conduct and attitude. *See Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010); *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986). Courts in this Circuit have typically awarded statutory damages between $1,000 and $5,000 for single use copyright infringement. *See e.g., Verch v. Blockchain Technologies Corporation*, No. 20-CV-2631 (LJL), 2021 WL 1198784, at *2 (S.D.N.Y. Mar. 30, 2021).[2]

### a) The Infringer's State of Mind

The Court finds that Defendant willfully violated Plaintiff's Copyright. *Bryant*, 603 F.3d at 144. *See also Howarth v. FORM BIB LLC*, No. 18-CV-7047 (JPO)(SN), 2020 WL 3441030, at *3 (S.D.N.Y. 2020), *rep. & rec. adopted at* 2020 WL 3436685 (S.D.N.Y. 2020). Finding willfulness indicates a greater statutory damages award to discourage wrongful conduct and adequately compensate for injury. *Howarth* 2020 WL 3441030, at *3. Additionally, willfulness can be

---

[2] *See also Hirsch v. Sell It Social, LLC.*, 20-CV-153 (LTS)(BCM), 2020 WL 5898816, at *5 (S.D.N.Y. Oct. 5, 2020) (awarding $5,000 in statutory damages for a single use infringement where plaintiff had no presented evidence of licensing fee history or actual losses); *Philpot v. Music Times LLC¸* 16-CV-1277 (DLC), 2017 WL 1906902, at *2 (S.D.N.Y. May 9, 2017) (finding statutory damages award of $5,000 was sufficient both compensate plaintiff and punish defendant for unauthorized use of two photographs where plaintiff did not provide evidence of actual damages or market values of photographs).

inferred from the Defendant's default "[h]owever, where this factor enhances damages, there is often 'additional evidence of willfulness and allegations of actual awareness on the part of the Defendant of their infringing activity'" *Martinka*, 2025 WL 2177258, at \*7 (quoting *Idir v. La Calle TV, LLC,* 19-CV-6251 (JGK), 2020 WL 4016425, at \*3 (S.D.N.Y. July 15, 2020)). Because the Court has found Defendant's default and conduct here evidence willfulness, (*see supra*) it is warranted to consider a damages award above the $750 minimum articulated by the statute.

### b)  The Expenses Saved and Profits Earned by the Infringer

The second factor examines the financial benefits the infringer gained from their unauthorized use of the copyrighted work. Here, the lack of evidence regarding Defendant's monetary gains renders this factor neutral. Defendant's default has "denied Plaintiff the ability to take fact discovery" and provide evidence regarding the costs saved or profits earned by Defendant. *Spin Master, Inc. v. Amy & Benton Toys & Gifts Co.*, 17-CV-5845 (VSB), 2019 WL 464583, at \*6 (S.D.N.Y. 2019). While Defendant's actions, namely using the Beauty Photograph without permission or licensing from Plaintiff, do reflect an attempt to profit from Plaintiff's copyright, the Court cannot evaluate the actual financial benefit to Defendant.

### c)  The Revenue Lost by the Copyright Holder

The third factor, revenues lost by the plaintiff due to the infringement, favors a lower award of statutory damages. Second Circuit case law "reflects that courts in this circuit commonly award, in cases of non-innocent infringement, statutory damages of between three and five times the cost of the licensing fees the Defendant would have paid." *Broadcast Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 199 (S.D.N.Y. 2016). "[Where] Plaintiff does not

assert that he previously licensed the Work, his sworn assertion regarding the value of a license for the Work [should be] supported by invoices for similar licenses that he has presented as evidence to the Court." *Reiffer*, 2023 WL 4029400 at *9.

Plaintiff provided an example of a licensing fee agreement between Plaintiff and a Canadian beauty company to use one of her photos in stores and on social media for one month in exchange for a license fee of $9,700. (ECF 24, Ex. A). Plaintiff provided another example of a three-year licensing deal for $5,600 where the usage was staggered over three different markets over the course of the three-year deal. (ECF 24, Ex. A)*.*

Plaintiff alleges $15,000 in damages, stating this to be around three times her lowest licensing fee. However, Plaintiff fails to account for the difference in scope between the single use on Instagram of the Beauty Photograph and the much larger scopes of the provided licensing fees. Plaintiff has neither provided her licensing fee for the Beauty Photograph nor a sample licensing fee for a similar photograph to be used for a single social media post. Without an appropriate comparator, the Court will not speculate on whether or not Plaintiff would command the same licensing fee for the use of a photo in a single social media post as she would for a national campaign. *See Roethlisberger v. Oxido Corp.*, No. 20-CV-01909 (PGG)(DF), 2021 WL 5772038, at *2 (S.D.N.Y. Dec. 6, 2021) (finding that a provided estimate made "no effort to account for the fact" that different photographic subjects have different market values); *See also Chosen Figure LLC v. Prabal Gurung, LLC*, No. 23-CV-8657 (AT)(GS), 2025 WL 752054, at *3 (S.D.N.Y. Mar. 10, 2025) (denying suggested award from plaintiff because provided licensing fee was for an advertorial photo displayed in print and TV advertising but the

13

photo at issue was only posted on Facebook). Accordingly, this factor militates strongly toward a lower statutory damages award.

### d)    The Deterrent Effect on the Infringer and Others

The fourth factor, the need to deter the Defendant and other potential infringers from committing future copyright violations, is neutral here. The Court can "award damages in an amount that will 'further the Copyright Act's dual objectives of compensating copyright owners for past infringement and deterring future infringement.'" *Ramales v. Hadid*,No. 23-CV-7060 (NRB), 2024 WL 4561770, at *3 (S.D.N.Y. Oct. 23, 2024) (quoting *Getaped.com, Inc. v. Cangemi*, 188 F. Supp. 2d 398, 403 (S.D.N.Y. 2002)). Courts in this Circuit have generally concluded that "the need for specific deterrence is particularly acute when the Defendant is 'a serial infringer, or . . . continues to infringe copyrights in spite of repeated notices of infringement.'" *Serio v. Skijor, USA, Inc.*, No. 23-CV-438 (LJL), 2023 WL 8372894, at *4 (S.D.N.Y. Dec. 4, 2023) (quoting *Parsons v. Bong Mines Ent. LLC*, No. 19-CV-813 (JMA) (AKT), 2021 WL 931506, at *9 (E.D.N.Y. Feb. 18, 2021)).

Here, Plaintiff has only provided evidence of a single instance of infringement. (*See* ECF 1). Accordingly, because there is no evidence of Defendant operating on a large scale, the need to increase the statutory awards significantly for deterrence is low. *See Martinka*, 2025 WL 2177258, at *8 (stating damages should not be increased significantly as a deterrent where the plaintiff presented no evidence of the Defendant being a serial infringer or of the Defendant operating on a large scale).

14

       *e)*       *The Infringer's Cooperation in Providing Evidence Regarding the Value of the Infringing Material*

The fifth factor, the infringer's cooperation in providing evidence regarding the value of the infringing material, is also neutral as applied here. While some courts construe a Defendant's default as evidence of non-cooperation, "it is more appropriate to look to whether the Defendant has engaged in an effort to conceal the fact or scale of its wrongdoing or to mislead the plaintiff or the court about the existence or scale of counterfeiting." *Spin Master Ltd.* v. *158, et al.*, 463 F.Supp.3d 348, 374 (S.D.N.Y. 2020). Plaintiff has not provided evidence tending to show that Defendant tried to conceal their wrongdoing or otherwise mislead the Court about the extent of the infringement. Aside from Defendant's default, which this Court does not deem probative, there is no indication that Defendant explicitly refused to cooperate. However, Defendant's default is more relevant in the sixth factor: conduct.

       *f)*       *The Conduct and Attitude of the Parties*

Although Defendant has been uncooperative by virtue of their default, Plaintiff's conduct and attitude must also be weighed. Plaintiff has demonstrated diligence in protecting her Copyright by promptly filing the Complaint and seeking legal redress. (ECF 1). Additionally, Plaintiff gave reasonable notice to Defendant via Cease-and-Desist letters prior to commencing this action. (ECF 18-1 at ¶3). Plaintiff's reasonable efforts to resolve the infringement without legal action and Defendant's default weigh in Plaintiff's favor. *Cf. Martinka*, 2025 WL 2177258 at *8 (finding the sixth *Bryant* factor should be interpreted neutrally where the plaintiff did not reach out to the defendant before commencing the action).

15

Weighing all six required factors, I find that a statutory damages award of $5,000 is appropriate here for Defendant's willful infringement under 17 U.S.C. § 504(c)(1).

### 2. *Damages for DMCA claim*

The DMCA permits a plaintiff to recover an award of statutory damages in the range of $2,500 to $25,000 "for each violation of section 1202." 17 U.S.C. § 1203(3)(B). A plaintiff can recover under both the DMCA and the Copyright Act, as each statute, "protect[s] different interests." *Agence France Presse v. Morel*, No. 10-CV-2730 (AJN), 2014 WL 3963124, at *10 (S.D.N.Y. Aug. 13, 2014). However, recovering under both statutes is only proper if the plaintiff "properly distinguishes among these injuries when it sets the amount of the award under each statute," to avoid duplication. *Reilly v. Commerce*, No. 15-CV-05118 (PAE)(BCM), 2016 WL 6837895, at *8 (S.D.N.Y. Oct. 31, 2016); *see also Mango v. Buzzfeed, Inc.*, 356 F. Supp. 3d 368, 378 (S.D.N.Y. 2019) (stating courts intend to "avoid [] duplicating compensation for similar conduct" under the Copyright Act and DMCA), *aff'd*, 970 F.3d 167 (2d Cir. 2020). Courts consider several factors including "the difficulty of proving actual damages, the circumstances of the violation, whether Defendant violated the DMCA intentionally or innocently, and deterrence." *Agence France Presse*, 2014 WL 3963124 at *10. "Courts in this district often award the minimum figure where . . . there is little or no evidence to show that the DMCA violation increased the actual injury to the plaintiff, and the damages submission is 'bare-boned.'" *Miller v. Netventure24 LLC*, No. 19-CV-7172 (LGS)(BCM), 2021 WL 3934262, at *7 (S.D.N.Y. Aug. 6, 2021) (internal citations omitted).

Here, Plaintiff fails to explain how her injury under the DMCA increased her actual damages. Plaintiff does not allege any facts to suggest how she has suffered actual damages

16

from Defendant's actions and has requested the statutory minimum, $2,500. (ECF 24 at 13); *but see Jerstad v. New York Vintners LLC*, No. 18-CV-10470 (JGK)(OTW), 2019 WL 6769431, at *4 (S.D.N.Y. Dec. 12, 2019) (awarding statutory minimum for a single 1202(b) violation where plaintiff "has not made much of an effort to support a damages figure"). Additionally, it is unclear whether Defendant's DMCA violation was willful because the Plaintiff's watermark was retained in the infringing post. *Cf. Mango*, 356 F. Supp. 3d at 378 (finding willful conduct where the Defendant intentionally altered the copyright information).

Because there is no evidence to support the Plaintiff's injury from the DMCA violation, Plaintiff is not entitled to recover damages under the DMCA as a matter of law. *Cf. Romanowicz v. Alister & Paine, Inc.*, No. 17-CV-8937 (PAE)(KHP), 2018 WL 4762980, at *7 (S.D.N.Y. Aug. 3, 2018) (awarding $2,500 in statutory damages where the plaintiff's damage submissions were "bare-boned at best").

### D.  **Attorneys' Fees**

Plaintiff also seeks $2,226.25 in attorneys' fees pursuant to 17 U.S.C. §§ 505, 512(f). (ECF 24 at 12). Under 17 U.S.C. § 505, a court may award reasonable attorneys' fees to the prevailing party in a copyright action. *Reilly v. Commerce*, No. 15-CV-05118 (PAE)(BCM), 2016 WL 6837895, at *12 (S.D.N.Y. Oct. 31, 2016). When deciding whether to award attorneys' fees under 17 U.S.C. § 505, the court may consider "(1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively reasonable; and (4) compensation and deterrence." *Bryant*, 603 F.3d at 144. Given Defendant's default, and the interest in deterring future copyright infringement, I find that an award of attorneys' fees is warranted. *Farrington v. Jewish Voice Inc.*, No. 21-CV-1575

17

(NGG)(AYS), 2022 WL 541645, at *6 (E.D.N.Y. 2022) (granting an award of attorneys' fees where default judgment was granted against Defendant and infringement was willful).

What constitutes a reasonable fee is committed to the court's discretion. *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998). Courts commonly use the lodestar method to create a "presumptively reasonable fee," by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. Of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). A reasonable hourly rate is defined as what a "reasonable, paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190. This rate is informed by those rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Artex Creative Int'l Corp.*, 687 F.Supp.2d at 359 (quoting *Blum v. Stenson*¸465 U.S. 886, 895 n.11 (1984)).

Once the Court determines a reasonable hourly rate, it turns to the reasonableness of the hours billed. This calculation considers whether "a reasonable attorney would have engaged in similar time expenditures" and "should exclude hours that are excessive, redundant, or otherwise . . . unnecessary[.]" *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "The burden of establishing that the requested hourly rates and number of hours worked are reasonable falls on the fee applicant." *Anstalt v. ShiftPixy, Inc.*, No. 19-CV-6199 (PGG)(RWL), 2020 WL 1330216, (S.D.N.Y. Mar. 20, 2020) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

### 1.  Hourly Rate

Plaintiff has submitted contemporaneous billing records reflecting 6.85 hours worked. (ECF No 24-2 at 8). The requested billing rate is $325 an hour. (ECF No 24-1 at ¶ 13). Courts in this District typically find hourly rates between $200 and $450 reasonable for associates in copyright cases, depending on their experience and role in the litigation. *Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc.*, No. 13-CV-1526 (RJS), 2020 WL 2848232, at *7 (S.D.N.Y. 2020) (collecting cases); *Bass*, 2020 WL 2765093, at *6 (finding courts in the Southern District of New York have approved associate rates of $350 in copyright cases). Therefore I, find that the requested rate for Taryn Murray ($325 per hour) is reasonable.

### 2.  Hours Spent

Plaintiff billed 6.85 hours to this case including, *inter alia*, 0.75 hours researching the claim, 0.2 hours advising client about filing her claim, 1.5 hours drafting the complaint, 1.4 hours drafting pre default papers, and 3 hours to finalize the default judgment motion. (ECF 24-2 at 8). After reviewing the time records, the time spent appears to be reasonable. The work mainly included drafting the complaint, organizing exhibits, and drafting the memorandum in support of the damages inquest. *Id*. *See Martinka*, No. 24-CV-05289 (JHR)(HJR), 2025 WL 2177258, (S.D.N.Y. Jul. 31, 2025) (finding attorneys' fees were reasonable because work was appropriately delegated and there were no signs of excessive or redundant hours).

Accordingly, I respectfully recommend that Plaintiff be awarded **$2,226.25** in fees.

### 3. Costs

A court may also award reasonable costs to a prevailing party in a copyright

infringement action pursuant to 17 U.S.C. § 505. Here, Plaintiff seeks to recover the costs of the

suit and requests $402 for the filing fee and $460 for incurred costs of service for the Summons

and Complaint on the Defendant (ECF 24 at 11). Plaintiff has provided documentation to

support its requests for the filing fee and service. (ECF 24-2 at 5-7). *See Ramales v. Hadid*, No.

23-CV-7060 (NRB), 2024 WL 4561770, at *3 (S.D.N.Y. Oct. 23, 2024) (awarding plaintiff's

claimed costs when plaintiff's attorney sufficiently documented the costs).

Accordingly, I recommend that Plaintiff be awarded costs in the amount of **$862**.

## IV.    CONCLUSION

For the foregoing reasons, I respectfully recommend that Plaintiff be awarded **$5,000** in

damages for copyright infringement. I also recommend that Plaintiff be awarded pre- and post-

judgment interest, and attorney's fees and costs in the amount of **$3,124.26.**  In total, I

respectfully recommend judgment be entered in favor of Plaintiff for a total of **$8, 124.26**.

## V.    OBJECTIONS

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

fourteen (14) days (including weekends and holidays) from receipt of this Report to file written

objections. *See also* Fed R. Civ. P. 6 (allowing three (3) additional days for service by mail). A

party may respond to any objections within fourteen (14) days after being served. Such

objections, and any responses to objections, shall be addressed to the Honorable Colleen

McMahon, United States District Judge. Any requests for an extension of time for filing objections must be directed to Judge McMahon.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS <u>WILL</u> RESULT IN A WAIVER OF OBJECTIONS AND <u>WILL</u> PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn¸*474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson¸*968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-39 (2d Cir. 1983).

**RESPECTFULLY SUBMITTED**,


_/s/  Ona T. Wang_

Dated: December 16, 2025            **Ona T. Wang**
        New York, New York          United States Magistrate Judge

21